No. 20,173.

Harry E. Roemer, et al., *v*. Sinclair Refining
Company.

(380 P. [2d] 56)

Decided January 28, 1963.　　Rehearing denied April 8, 1963.

Mr. Robert E. McLean, Mrs. Marjorie Worland
McLean, Mr. Benjamin W. Fann, for plaintiffs in error.

Messrs. Sternberg & Taylor, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

We will refer to plaintiffs in error as defendants, and to defendant in error as Sinclair.

Sinclair commenced the action for specific performance upon its election to exercise an alleged option to purchase certain real estate in Castle Rock, Colorado, which had been occupied by it since 1932 under a lease and option agreement entered into with the predecessor in interest of defendants.

Defendants answered the complaint and filed a counterclaim for damages allegedly sustained by them resulting from the alleged unlawful withholding by Sinclair of the real estate from their use.

A "Request for Admission of Facts and Genuineness of Documents" was filed by Sinclair relating to a series of lease agreements entered into by it and the defendants or their predecessors in interest. The genuineness of all of said documents, the same not being denied, stands admitted under the provisions of Rule 36, R.C.P. Colo., and Sinclair filed its motion for summary judgment. Following a hearing the trial court granted the motion and decreed specific performance of the option to purchase as contended by Sinclair. Defendants seek review by writ of error.

The uncontroverted facts as revealed by the pleadings and the admissions are summarized as follows:

Under date of March 25, 1932, Sinclair leased the property in dispute from defendants' predecessors in title for a period of ten years or until March 26, 1942. The contract was in writing and provided, inter alia, that lessee should have the right to conduct and operate a service station on the premises, and that:

"It is understood and agreed by and between the parties hereto that in consideration of the premises, Lessors hereby give and grant to Lessee the exclusive option and privilege of purchasing the above described

premises and all improvements, buildings, structures, equipment, appliances, furniture, fixtures, unloading rack and unloading facilities for the sum of SIX THOUSAND SIX HUNDRED SEVENTY-THREE AND 80/100 (6673.80) DOLLARS in cash at any time during the term of this lease or any extension thereof; * * * "

February 24, 1941, an extension agreement was entered into between Sinclair and the original lessors under the terms of which the lessors agreed to make improvements on the premises "in order to induce Lessee to continue said lease in effect"; and extended the lease at a reduced rental for a period of five years from the date of completion of the improvements with an option to lessee to renew for an additional five years upon giving of a notice of election to exercise said option. The instrument then provides, inter alia:

"3. * * * Upon giving the notice aforesaid, the term *shall be so extended and all the provisions of said lease as hereby supplemented and amended shall continue in full force and effect during such extended term.*

"4. The sum provided for in the option to purchase said premises granted Lessee in said lease shall be increased from SIXTY-SIX HUNDRED SEVENTY-THREE AND 80/100 ($6673.80) DOLLARS to SEVENTY-SEVEN HUNDRED AND NO/100 ($7700.00) DOLLARS upon the completion of said service stall addition *and said option shall remain in full force and effect during the term as hereby extended or any further extensions or renewals thereof.*

* * *

"7. *The rest and remaining terms and conditions of said lease shall remain in full force and effect except as specifically modified and amended herein.*" (Emphasis supplied.)

A supplemental agreement was entered into August 4, 1941, amending the instrument last mentioned in some particulars not pertinent to the present controversy.

March 6, 1946, a further extension agreement was entered into which provides, inter alia, that:

"2. The purchase option contained in said original lease as amended in said extension agreement aforesaid shall remain in full force and effect during the term as hereby extended.

\* \* \*

"The rest and remaining terms and conditions of said original lease as heretofore extended and supplemented shall remain in full force and effect except as specifically modified and amended herein."

May 7, 1951, another extension agreement was entered into continuing the original agreement, as amended, for five years beginning July 1, 1951, and ending June 30, 1956, with an option to again extend the term of the lease for an additional five year period beginning July 1, 1956. This extension agreement provided that by giving notice on or before May 1, 1956, "the term shall be so extended and all of the provisions of said original lease as extended shall continue in force during such extended term." This extension agreement also states that:

"All the rest and remaining terms and provisions of said original lease as extended shall be and remain in full force and effect except as specifically modified herein."

On February 29, 1956, plaintiff gave defendants notice of its election to exercise the option to extend said lease for an additional term of five years commencing July 1, 1956, "subject to all the terms and provisions in said lease as amended."

▉ Based upon all of the above, plaintiff on June 12, 1961, notified defendants by registered mail, in accordance with the terms of the original lease of March 25, 1932, of its election to exercise its option to purchase the premises. Defendants refused to convey the property, and now contend that Sinclair had no option to

buy at the time it gave the notice last above mentioned. The trial court ruled that there was no disputed question of fact but only a question of law as to whether the several instruments referred to above operated to extend the option to purchase. The trial court held, and we agree, that the question is one of law and under the record presented it could properly be determined upon a motion for summary judgment.

It is unmistakably clear that it was the intention of the parties that all the terms and provisions of the original document were to be continued in effect except as modified by the subsequent instruments. Throughout the entire period of time covered by the original contract and extensions thereof, all of the documents executed had reference to renewals and amendments of the original contract. The subsequent renewals as a matter of law operated to continue the option to purchase on the terms set forth in the amendment of February 24, 1946, in which an increase of the purchase price by approximately $1,000.00 was agreed to by the parties.

The contention of counsel for defendants, that the enforcement of specific performance upon exercise of the option to purchase under the facts shown here would amount to a violation of the rule against perpetuities, is wholly without merit and warrants no further consideration.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.