WESTER & CO., Plaintiff-Appellant,

v.

Junior Lewis NESTLE, Defendant and Third-Party Plaintiff-Appellee,

v.

John HERLINE, Third-Party Defendant and Cross-Appellant,

and

Eric D. Ellis, Third-Party Defendant.

No. 81CA1255.

Colorado Court of Appeals, Div. III.

July 28, 1983.

Duitch, Duitch & Gerig, Robert M. Duitch, Colorado Springs, for plaintiff-appellant.

Lyle Robertson, Colorado Springs, for defendant and third-party plaintiff-appellee.

Simons & Iuppa, Frank S. Simons, Jr., Colorado Springs, for third-party defendant and cross-appellant.

STERNBERG, Judge.

The plaintiff, Wester & Co., leased a store to defendant Nestle and third-party defendant Ellis, who conducted a partnership business named Red Rocks Meat and Deli on the premises. Nestle assigned his interest in the partnership to third-party defendant Herline. Rent being in default, the lessor sued Nestle. When Nestle prevailed in a trial to the court, the lessor appealed. We affirm.

Nestle and Ellis leased the premises in June 1978. They signed the lease as individuals, but lessor knew they were operating Red Rocks Meat and Deli as a partnership. Nestle transferred his partnership interest in October 1978 to a third-party, John C. Herline. Included in this transfer was Nestle's entire interest in partnership equipment, leases, and other assets. In return, the new partnership, and Ellis and Herline individually, agreed to assume all liabilities and to indemnify Nestle. In January 1980, lessor and Ellis executed an addendum to the original lease to lease adjacent space, which also altered the rental base for the premises first leased. By May of that year lease payments were in default for both premises, and lessor sued Nestle for breach of the lease.

At the trial, Ellis testified that the assignment and release agreement had been mailed to lessor, thereby giving notice that Nestle was no longer liable on the lease; that he introduced Herline to lessor as his new partner, and the latter did not object to a change in parties, or request that Nestle remain liable; and that when the addendum was executed it was clear to lessor that Ellis was then operating as a sole proprietor. As supporting evidence Nestle submitted the affidavit of the president of lessor in which he acknowledged being advised that Nestle was no longer a partner when the addendum to the lease was executed.

The lessor denied receiving notice prior to January 1980 that Nestle had withdrawn from the partnership and maintains that it had not agreed to look to the remaining partners and the new partnership to satisfy its debts.

Nestle brought in Herline and Ellis as third-party defendants, claiming a right to indemnification in the event he was found liable to the lessor. Nestle was granted summary judgment on this indemnification claim before trial. Herline cross-appeals this ruling.

Following trial on the primary action, the court resolved the factual disputes in Nestle's favor. Finding that the partnership had dissolved when Nestle withdrew, the court applied § 7-60-136(2), C.R.S.1973, to the facts and concluded, from lessor's knowledge of the situation and the parties'

course of dealings, that lessor had consented to Nestle's discharge from liability. It also concluded that provisions in the addendum materially altered the parties' liability on the underlying lease, thereby discharging Nestle from liability by application of § 7–60–136(3), C.R.S.1973.

On appeal, the lessor argues that the court should not have applied § 7–60–136, C.R.S.1973, because under § 7–60–127, C.R.S.1973, assignment of Nestle's interest did not dissolve the partnership. Further, even assuming that ruling was correct, lessor argues that the non-assignment clause in the lease should control, and that the factual findings necessary to the judgment are not supported by the record.

Lessor's reliance on § 7–60–127, C.R.S. 1973, is misplaced. That section states that a:

"conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee . . . to interfere in the management or administration of the partnership business or affairs . . . but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."

■ Where a partner assigns his rights to profits, but the remaining partners have not agreed to admit him as a partner, this section assures that the assignee does not become a partner without the consent of the remaining partners in contravention of § 7–60–118(1)(g), C.R.S.1973. By distinguishing between assignees of a partnership interest and the admission into the partnership of new partners, § 7–60–127 operates to allow conveyance of a right to receive profits without giving the assignee an interest in the firm's assets. *Rossmoore v. Anderson,* 1 F.Supp. 35 (S.D.N.Y.1932); *Rapoport v. 55 Perry Co.,* 50 A.D.2d 54, 376 N.Y.S.2d 147 (1975). Hence, the provision that the partnership is not dissolved merely protects the original parties from an unwanted partner or from a finding of partnership from the fact of the assignee's re-

ceipt of a share of the profits. *See* § 7–60–107(1)(d), C.R.S.1973.

■ In contrast, § 7–60–129, C.R.S.1973, upon which Nestle relies, is consistent with the concept expressed in § 7–60–131(1)(a)(II), C.R.S.1973 (1982 Cum.Supp.) that dissolution is caused by "the express will of any partner when no definite term or particular undertaking is specified." Section 7–60–129, C.R.S.1973, provides that dissolution of a partnership is the change in relation of the partners caused by any partner ceasing to be associated in the carrying on of the business. Thus, no party is compelled to continue as a partner when, by his express will, he chooses to withdraw.

■ By the plain meaning of § 7–60–129, C.R.S.1973, when one partner withdraws from the business, the partnership is dissolved as to that party, though the remaining partners may elect to continue operating as a partnership. Other states have applied this rule under the Uniform Partnership Act. *See C.E. Hooper, Inc. v. Perlberg, Monness, Williams & Sidel,* 72 A.D.2d 687, 421 N.Y.S.2d 353 (1979); *Cave v. Cave,* 81 N.M. 797, 474 P.2d 480 (1970); *McKellar v. Bracewell,* 473 S.W.2d 542 (Tex.Civ.App. 1971). We follow that construction and thus agree with the trial court that the partnership between Ellis and Nestle was dissolved in October 1978. That being the case, application of § 7–60–136, C.R.S.1973, was correct.

■ The dissolution of a partnership does not of itself discharge the existing liability of any partner. Section 7–60–136(1), C.R.S.1973. A partner is discharged from existing liability by an agreement to that effect between the withdrawing partner, the remaining partners, and the partnership creditor, and "such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business." Section 7–60–136(2), C.R.S.1973. Or, under § 7–60–136(3), C.R.S.1973, a material alteration in an existing liability will discharge from lia-

bility a partner whose obligations have been assumed.

█ The trial court found, on conflicting testimony, that the conditions for discharge from liability under both of these subsections existed, and such factual findings, supported by evidence in the record, may not be disturbed upon appeal. *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970).

█ The lessor's argument that this assignment of interest was a breach of the clause prohibiting assignment of the lease is without merit. Even if it is assumed, *arguendo,* that occupancy by the partnership after withdrawal of Nestle was an assignment in breach of the lease, the lessor had waived any objection by accepting the rent for over two years. *See Kimmick v. Santilli,* 42 Colo.App. 341, 596 P.2d 1223 (1979).

Because of this disposition of the primary action, Herline's cross-appeal is moot.

Judgment affirmed.

VAN CISE and KELLY, JJ., concur.