(808 P.2d 907)

No. 65,330

Jean C. Belt, *Appellant,* v. Robert L. Shepard, *Appellee.*

Opinion filed April 5, 1991.

*David K. Markham*, of Dearth & Markham, Chartered, of Parsons, for the appellant.

*Glenn E. Casebeer II*, of Schneider & Casebeer, of Coffeyville, for the appellee.

Before BRISCOE, C.J., BRAZIL and ELLIOTT, JJ.

BRISCOE, C.J.: Jean Belt appeals from the denial of her claim to recover the remaining balance due on a liquidation agreement between her deceased husband, C. Robert Belt, and the accounting partnership from which he had retired, C. Robert Belt & Company. We reverse and remand with directions to enter judgment in favor of Jean Belt.

Robert Belt retired from the partnership in 1983 and, pursuant to the partnership agreement, entered into a liquidation agreement requiring the partnership to pay him a fixed sum over a ten-year period. In 1986, another partner, Robert Shepard, withdrew from the partnership. The remaining partners did not purchase Shepard's partnership interest and Shepard was forced to file suit. In 1987, the remaining partners sold their interest to Jerry Buchanan and, on January 18, 1988, Robert Belt died. In August 1988, Shepard prevailed in his lawsuit and was awarded the value of his partnership interest less his pro rata share of the remaining obligation due Belt. Payments to Jean Belt under the 1983 liquidation agreement ceased in September 1988 and she filed suit to collect the remaining balance owed under the agreement. All of the partners except Shepard have filed for bankruptcy.

In denying Jean Belt's claim against Shepard, the district court found that a partner does not remain liable to a partnership creditor after withdrawal from the partnership. The court further found the remaining partners had assumed the obligation of the partnership to Robert Belt and he had agreed to that arrangement, thus discharging Shepard from partnership liability. Specifically, the court found Belt had agreed to Shepard's discharge

from liability by (1) Belt's failure to intervene in Shepard's lawsuit against the partnership; (2) Belt's continued acceptance of checks from the remaining partners; and (3) Belt's oral agreement with Shepard indicating Shepard no longer had any obligations to Belt.

The sole issue on appeal is whether the district court erred in construing K.S.A. 56-336 and in applying the statute to the facts of this case.

K.S.A. 56-315 provides: "All partners are liable jointly and severally for everything chargeable to the partnership; but any partner may enter into a separate obligation to perform a partnership contract." It is undisputed the liquidation agreement entered into between Robert Belt and the partnership following his retirement was a partnership obligation. Therefore, there was a joint and several obligation of all of the remaining partners for which each could be sued. The issue here is whether Shepard remained liable for this partnership obligation or if subsequent actions by Shepard, Belt, and the partnership effectively discharged Shepard.

K.S.A. 56-336 provides:

"(a) The dissolution of the partnership does not of itself discharge the existing liability of any partner.

"(b) A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself or herself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business.

"(c) Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations.

"(d) The individual property of a deceased partner shall be liable for all obligations of the partnership incurred while the deceased partner was a partner but subject to the prior payment of his or her separate debts."

Thus, the general rule is that dissolution of the partnership alone is insufficient to discharge the existing liability of a withdrawing partner. All of the partners remain jointly and severally liable for all existing liabilities unless subsections (b) or (c) of 56-336 apply. See *Daniels Trucking, Inc. v. Rogers*, 7 Kan. App. 2d 407, 408-09, 643 P.2d 1108 (1982). There is no basis for concluding that

56-336(c) applies in the present case. There is no evidence that anyone agreed to assume the obligations of the dissolved partnership or that Belt, knowing of such an agreement, consented to a material alteration in the nature or time of payments payable to him.

For Shepard to escape liability for the partnership obligations existing at the time of his withdrawal, he has the burden of proving he, Belt, and the remaining partners mutually agreed that he would be discharged from liability. Shepard argues such an agreement can be inferred from the course of dealing between Belt and the partnership continuing the business. K.S.A. 56-336(b).

The question of whether an agreement to modify a withdrawing partner's liability exists is a question of fact. See *Wester & Co. v. Nestle*, 669 P.2d 1046, 1049 (Colo. App. 1983). Our standard of review of questions of fact is limited to determining if the findings are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law. *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 19, 774 P.2d 919 (1989).

The district court made the following findings of fact in support of its decision that Belt agreed to discharge Shepard from liability:

"A. C. Robert Belt knew of defendant's lawsuit against the partnership.

"B. C. Robert Belt knew defendant had reduced the amount he was claiming from the partnership by his share (20%) of the partnership's liability to C. Robert Belt.

"C. C. Robert Belt did not seek to intervene in the lawsuit as a creditor to oppose the reallocation between the partnership and Shepard of the liability to him.

"D. C. Robert Belt did continue to accept payments from the partnership, minus defendant, as he had in the past.

"E. C. Robert Belt approved two subsequent transfers of partnership interest, minus Shepard, from Locke to Buchanan."

Belt's knowledge of Shepard's action against the partnership and his subsequent nonintervention in that action have very little, if any, relevance to the issue at hand. The district court took judicial notice of Shepard's action. The record on appeal indicates only that the action was filed October 15, 1987, and a judgment was rendered August 18, 1988. Belt retired from the partnership in 1983 and had no interest in the partnership thereafter other than

as a partnership creditor. See *Gottesman v. Toubin*, 353 S.W.2d 294, 298 (Tex. Civ. App. 1962). To intervene in Shepard's action against the partnership, Belt would have been required to show he had a substantial interest in the subject matter of the action and inadequate representation of his interest (K.S.A. 60-224[a]); or a claim involving a common question of fact or law (K.S.A. 60-224[b]). As a mere partnership creditor, Belt could satisfy neither criterion for intervention. Any other interpretation would lead to the absurd result that every partnership creditor would have to intervene in every lawsuit involving a partner or risk losing valuable legal rights.

The finding that Belt continued to accept payments from the partnership after Shepard's withdrawal is insufficient in and of itself to infer an agreement by Belt to discharge Shepard from liability. See *White v. Brown*, 292 F.2d 725, 727 (D.C. Cir. 1961). Additionally, the finding that Belt approved subsequent transfers of partnership interest has no legal basis. Belt retired from the partnership in 1983 and no longer had any managerial authority over the partnership and no voting power. He was relegated to the role of a partnership creditor upon his retirement and had no authority to approve or disapprove subsequent partnership activities.

This leaves the finding that Belt had knowledge of Shepard's action against the partnership and knew Shepard's claim against the partnership was reduced by his pro rata share of the partnership's liability to Belt. It is unclear from the record just how Belt could have known the terms of the judgment since Belt died over eight months before the judgment was rendered. The parties and the trial court did refer to "Defendant's Exhibit B" at trial, but the exhibit was not included in the record on appeal. Apparently, exhibit B is a dated letter from Shepard's accountant to the partnership valuing Shepard's partnership interest with a reduction for his pro rata share of the liability to Belt and the court accepted the letter as evidence that Belt knew of Shepard's claim, knew of the parties' desire to reallocate the liability, and agreed to that reallocation. The question is whether a partnership creditor's knowledge of a settlement between the partnership and a withdrawing partner reducing the withdrawing partner's interest by his pro rata share of the partnership debt is equivalent to

assent to an agreement discharging the withdrawing partner of liability. Even assuming Belt did know of the terms of Shepard's claim, under the facts of this case, that knowledge does not constitute assent to such an agreement.

As an additional argument in support of his discharge, Shepard testified the reduction in his claim against the partnership reflected an agreement he had with Belt. Shepard relied upon the terms of the initial partnership agreement of C. Robert Belt & Company as evidence that Belt agreed to Shepard's discharge. Shepard also stated he never discussed his lawsuit with Belt. Based upon the terms of the partnership agreement and Shepard's other conversations with Belt, Shepard concluded that Belt agreed the partnership was to continue to make the payments.

The initial partnership agreement of C. Robert Belt & Company did not require Shepard to reduce his partnership interest by a pro rata share of any partnership debt. Pursuant to the partnership agreement, the partnership is required to purchase the interest and each five percent interest owned by the withdrawing partner for more than five years is worth five percent of the gross income of the partnership for the prior calendar year. For each five percent interest owned less than five years, the withdrawing partner receives only his cost. There is no provision allowing the remaining partners to reduce the partnership interest by any pro rata share of existing obligations. Belt's agreement to abide by the partnership agreement when the C. Robert Belt & Company partnership was created is not sufficient to infer he agreed to discharge Shepard of his liability.

Even if we find that Belt agreed to discharge Shepard of his obligation, the agreement cannot stand. Every contract requires consideration to be legally enforceable. *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 211, 606 P.2d 1009 (1980). This includes an agreement by a partnership creditor to release a withdrawing partner. See *Gannon v. Bronston*, 246 Ky. 612, 616-17, 55 S.W. 2d 358 (1932); *Fried v. Fisher, et al.*, 328 Pa. 497, 500, 196 A. 39 (1938); *Marshall Field & Co. v. Fishkin*, 180 Wis. 149, 153, 192 N.W. 463 (1923). Here, there is no consideration supporting Belt's purported agreement to release Shepard of his liability to him. Shepard admitted he gave Belt no consideration for the release and received no written release or document signifying

an agreement. Further, Shepard does not allege or establish the remaining partners also agreed to his release. Absent consideration and absent the agreement of the remaining partners, Belt's agreement with Shepard, assuming there was one, is legally unenforceable and Shepard is not discharged from his joint and several liability for the partnership obligation.

Reversed and remanded with directions to enter judgment in favor of Jean Belt.